May it please the court. Good morning, your honors. My name is Elena Ziprin, and I represent the petitioner Alexan Mkrtchyan. He's with me in the courtroom today, and his wife and two children are currently outside the courtroom. Alexan entered the United States over six years ago and timely filed for asylum. In fact, he filed two affirmative asylum applications, one which was actually denied before his stay had expired. His asylum matter had remained pending for over four years with the Asylum Office, then with the Immigration Court, and then with the Board of Immigration Appeals. The BIA issued its decision denying Alexan's pleas for asylum and withholding on October 3rd, 2003. And had Alexan been notified of such denial, he would have timely sought review by this court. And this is really where our story begins. As with any lengthy asylum case, many events can occur during the process. In the course of the past six years, Alexan has married Jennifer, a U.S. citizen. He has become the stepfather of her four children. He has also fathered his own child, Alexis, who turned one not too long ago. His siblings and mother are all either permanent residents or citizens of the United States. And, of course, the President signed into law the Real ID Act of 2005, which significantly also has some kind of significance or prevalence to his particular matter. Were it not for former counsel's failure to timely file a petition with this court, and that would be for a petition for review to review the BIA decision denying Alexan's pleas for asylum and withholding, he would have presented the many other facets of his life which would have all allowed him to request a remand or at least a reopening of his matter so that he could adjust status in this country. By stripping him of his appeal rights, Alexan, in effect, became subject to a final order of removal. He didn't act because he relied on a reputable attorney who assured him through various letters, including letters to the detention office and also letters to the Board of Immigration Appeals, not to mention a letter that he provided that Alexan should keep in his glove compartment, that his appeal was still pending. And he did so as late as February of 2004, when all time had expired for Alexan to seek any kind of review with any court. When detention officers raided Alexan's and Jennifer's house early in the morning of February 10th, that was really the first notice to him that, in fact, what the attorney was saying to him was really not the case. And he retained my services. We immediately filed a petition for alien relative. We also filed a habeas petition with the district court, and we requested an emergency stay of removal so that somebody could be enlightened as to what happened and whose fault it may have been. Counsel, the government filed a letter suggesting that under the Real ID Act, we simply treat the habeas case and the appeal as a petition for review. And directly review the BIA's order, ignoring the district court's order. At least that's how I understand their letter. Do you agree or disagree with that suggestion? Your Honor, there are actually many options available, which would probably all be favorable to Alexan. If the court were to treat this as a petition for review, remand, or if it were treated as a petition for review, I would ask that a certified record be issued. And that we be given an opportunity to brief the asylum issue. Well, if we were reviewing the BIA's order, what order would we be reviewing? You would be reviewing the order which denied Alexan his pleas for asylum, which affirmed the immigration judge's decision, and which significantly also determined that, unlike the immigration court's determination that Alexan had filed a frivolous application, in fact, it was not frivolous. So you would be reviewing that decision. And that would certainly allow Alexan to remain in a process where he could seek the remand or the reopening of his matter so that he could adjust status based on his marriage to a U.S. citizen and pending and close to being approved I-130 petition. The main issue is by not having any appellate avenue, he cannot seek these other alternate means to remain in the process. And that's why I think it's important for us to have an appellate avenue in this country, which are probably more viable for him now than his asylum claim may be, without further illumination to this Court of what that claim was. So I don't necessarily think that the Board of Immigration Appeals' decision is properly before this Court without at least issuing a briefing schedule for us to brief the asylum issues, the withholding issues, and certainly to perhaps request voluntary departure that was also denied by the immigration judge. I don't think that the Board of Immigration Appeals' decision is properly before this Court without at least issuing a briefing schedule for us to brief the asylum issues, the withholding issues, and certainly to perhaps request voluntary departure that was also denied by the immigration judge. If the Court were to decide to file a motion to reopen. Your Honor, actually, it is too late. What we have done in light of the REAL-ID Act is we have filed a motion to reopen with the BIA requesting that they sua sponte reopen the matter so that they can look at the bona fides of his marriage and remand down to the immigration court. But certainly at the time when we filed the habeas petition, it would have been too late. The 90-day expiration period had expired for filing a motion to reconsider, and the 30-day period to file a petition for review had also expired as late as February of 2004. And so it would be my suggestion to you that at that point it was too late. You're saying if we treat this as a petition for review, treat the habeas proceeding as a petition for review under the REAL-ID Act, then we can get review, require certification of the record on the asylum denial? Actually, Your Honor, what I'm saying is... I don't think that's exactly what the government had in mind. No, Your Honor, but actually I think what the government is suggesting, and certainly the government can apprise you of their stance, is that they would like this to be treated as a petition for review of the immigration court's decision, the BIA affirmance of the immigration court's decision. That would certainly be an option. We would certainly like you to treat it as a... Do we have the record on that, or we don't? You have a record that was submitted to you as an excerpt of record, whatever documents either petitioner, appellant, or respondent appellee felt it was appropriate for you to review. But you certainly don't have the entire record regarding his asylum pleas. That wasn't part of the record. I would suppose that if you were to treat this as a review or a direct appeal of the BIA affirmance of the immigration court's decision, you would have to be mindful of precedent in the circuit, which is Derringer v. Reno, a case that was decided in 2001. And in that particular case, the district court for the district of Western District of Washington actually granted or instructed the government to reissue a BIA decision so that the petitioner could have an opportunity to actually petition this court for review. That would certainly be an option as well. In that case, the only thing that the attorney did was file the appeal one day late to this circuit. In our case, the facts are a little bit stronger because we had numerous assurances, the petitioner had numerous assurances in writing that his BIA appeal was still pending. Who was the immigration lawyer, the prior immigration lawyer? His name is Stephen Recor. I believe a former U.S. attorney for the state of Washington. Stephen what? Recor. How do you spell it? R-E-C-O-R. I think in the Derringer case, the attorney on that case was Dan P. Danilov, one of the most respected and noteworthy attorneys in immigration law. And he pretty much came to a point in his life where he lost the respect of a lot of his clients. But certainly, this situation is analogous, if not even more fact-driven, given the very real idea. And I think you have that in the excerpts of Recor that the attorney was giving assurances continuously that the case was pending. Was there a bar complaint made against the attorney? Your Honor, we did not file any complaints. The petitioner did not file any complaints against the attorney because the attorney represented that an appeal was pending. And the petitioner believed that the appeal was pending. So you haven't met the requirements of Lozada then? No, Your Honor, but those requirements aren't necessarily the only requirements that can get review. There can certainly be a due process violation as well that can be reviewed by this Court. And I think that in the habeas realm, that is exactly what was being reviewed and, unfortunately, in our case, denied. What's a due process violation? Not being informed by having a right to counsel, effective counsel, and not being informed of the fact that you have a certain number of days to file an appeal, not being informed that you're married to a U.S. citizen and you have a right to ask for a remanding so that you can receive an adjustment. Well, how does that differ from ineffective assistance of counsel? Excuse me, Your Honor? How does that differ from ineffective assistance of counsel? It doesn't differ from ineffective assistance of counsel. I would just suppose that it's a different way to couch it. I mean, the requirements that are in Lozada are very strict requirements that need to be followed. By filing the habeas petition, without using the case of Lozada, I believe the Petitioner set out what he determined to be ineffective assistance of counsel, but it was more of a miscommunication, misrepresentation argument as opposed to an outright shredding of documents and not notifying the appellant or the Petitioner of his right to appeal. So I think that's the difference. Thank you. Okay, we want to hear from you, and we can, Judge Fragerson will probably add a little time for the government, if it needs it, or for you. Good morning. May it please the Court, Kristen Johnson on behalf of the United States of America. I would like to start by addressing the Real ID Act of 2005. The government petition clearly falls within the Real ID Act of 2005. It's clearly a petition which challenges the validity of a final removal order. Under Section 106A of the Real ID Act, this habeas petition falls under the Act. We believe that because the habeas petition falls under the Act, it should be treated as a petition for review. Although the habeas petition was pending in this Court at the time of enactment of the Act, and the Act is actually silent on what to do with habeas petitions that are pending before the court of appeals on the date of enactment. But the Act in Section 106C states that habeas petitions that are pending before the district courts shall be transferred to the court of appeals and shall be converted to petitions for review. So if it is to be converted, or whatever term we want to use, transformed into a petition for review, is Petitioner's Counsel correct that we would then need the certified administrative record, and that we would then be reviewing the merits or lack thereof of the asylum claim? The government does not agree that we would need a certified record in this matter. We do agree that once it's converted to a petition for review, that we would, that the court would be in a position of deciding the BIA's affirmance of the immigration judge's denial of asylum. And how could we do that without the record? We have filed a supplemental excerpt of record, which does not include the entire A file, but it does include the immigration judge's decision. It includes the BIA's affirmance. And again, if once this, the government's position ---- The agency found that the Petitioner was lying and found inconsistencies. So how could we properly review that without looking at the whole record to see whether that's supported by the record, which is the question, the substantive question that we would have to answer? Correct. And the government's position is that although the entire record is not there, the Real ID Act of 2005 does not have a provision in it under subsection C, whereby once a habeas petition is converted to a petition for review, that the court is not required at the Apple to file another brief. He's held ---- My question had nothing to do with briefing. My question had to do with the record. It can't, under the rules of this Court, we order supplementation of the record? And I guess I was nonresponsive. I think the Court has the power to do that. In this case, we don't think it's necessary. He has not challenged the validity of the asylum decision. On the district court habeas petition, there is no provision or challenge to the asylum decision. He is simply going forward on his new marriage and his alleged right to adjust and the ineffective assistance of counsel claim. But what's the government's position both procedurally and substantively with respect to adjustment of status on the basis of his marriage? We don't believe that he's entitled to adjustment of status on the basis of his marriage. We do believe that that needs to be addressed in a motion to reopen before the BIA. He does have a pending I-130. That is just a pending application. It has not been approved. And as the government noted in its brief, the service center at the time of filing its brief in February was adjudicating applications with a filing date of October 30, 2003. His application was filed February 17, 2004. So it's a matter of timing. You don't have any basis to determine at this time whether his marriage is valid or whether his I-130 would be approved. Well, actually, Your Honor, there's more. Even if the I-130 was approved, he would have to obtain an I-485 to adjust to status. He would either be looking at adjusting to status under INA section 245A or 245I. And I believe the facts in the record show that he's not eligible for either. Under INA 245A, he would have had to have been eligible for a visa at the time the I-130 application for his benefit was filed. He overstayed his visa. So we he would not the government doesn't believe that he would qualify under 245A. Under 245I, he would need an I-130 that was filed on or before April 30, 2001. His I-130 was filed February 17, 2004. Even if he did, you know, satisfy some criteria for eligibility for adjustment, he then has to overcome the presumption that his marriage is invalid based on the fact that he was married after the final order of removal under the Marriage Fraud Amendment Acts. He would have to prove by clear and convincing evidence that his marriage was done in good faith, that it was in accordance with the law, in the place it was, in the place it occurred, and that it was not for the benefit of obtaining his immigration status. Those are very strong burdens to overcome. So even if we had the approved I-130, even if he could qualify under some sort of section 245 for eligibility, then he's got to overcome the presumption we don't believe that he would meet that burden in this case. Because if we reach that point, what, you don't believe he could meet his burden to prove that his marriage is genuine? If we did reach that point, and that's a determination that the Bureau of Immigration Affairs would have to determine, the BIA would have to determine that, and DHS would have to determine that based on the evidence that he submitted to them. So at this point in the record, we don't have sufficient evidence to determine that. He would need to submit that to the BIA with a motion to reopen. Which is too late to file. It is too late to file. However, the BIA and Department of Homeland Security does have the authority and the ability to waive the timeliness if there are, if there are, if he qualifies and if the evidence that he submits provides a reasonable basis, they can waive the timeliness, and they can then issue a stay of the final order of removal. Is there any prospect of doing that in this case by way of agreement between the parties, waiving the timeliness? The government is not prepared to enter into an agreement in this instance, in this case. He has, it's my understanding based on the representations today that he has filed a motion to reopen. When DHS, Department of Homeland Security and the Board of Immigration Appeals reviews the evidence, they themselves are able to make that determination. But today, at this point, the United States Attorney's Office does not have the authority to enter into that kind of agreement. Should we be holding decision on this until they make that determination? Your Honor, that It's a very strange procedural setting where we're being asked, you know, kind of like to function as a immigration agency instead of the agency, and if they have a decision that would render entirely moot the issues we've got, why shouldn't we just defer acting until they make that decision? Is that impossible? I think it's possible the Court could do that, but I think it runs contrary to the failure to exhaust, and it runs contrary to the finality that Congress is trying to impose over final orders of removal, and that they have done with the Amendment Acts of 2000 with respect to marriages post final order of removal. There is a procedure for him to file this motion to reopen. Your Honor, that is going to take a very significant amount of time. The I-1 I'm sorry. Go ahead. I guess I'm just confused by your mentioning of exhaustion, because doesn't exhaustion have only to do with habeas, and this isn't a habeas anymore? Where does exhaustion fit in now? If this case is converted for a petition for review, his remedy for the his to adjust status based on his marriage should have been a motion to reopen with the Board of Immigration Appeals. Which was filed late. Which is filed very late. However, Your Honor, it could have been filed on time. He was married one month before the 90-day deadline ran for the motion to reopen. And I need to just for the record correct the government's brief. At page 22, we had actually calculated that wrong and said that he was married two days after the deadline had run. But in fact, he was married one month before the deadline had run for his to file a motion to reopen with the Board of Immigration Appeals. He did nothing. He did not file the I-130 until the day after immigration officials found him and he was about to be deported. In some other cases that I've been involved with that have some of these kind of procedural complexities and adjustment of status questions, the parties have been interested in mediation. Is that something that would make any sense in the context of this case? It does make sense in these types of cases, but not in this particular case. The government's not willing to enter into it in this particular case because of the complete failure to exhaust remedies and do anything until he's absolutely had to. And what we're concerned with is not having any finality to this final order of removal. What we've got is if we say, well, okay, we see that he did not file a timely motion to reopen and we see that he now, after his post-order of removal, has been married. Let's stay this and let the BIA re-adjudicate the entire thing. We have no finality. Why is that important? Because any alien could get married and file an I-130 after the final order of removal and then ask that everything be stayed. And that's exactly what Congress specifically did not want when they filed the Life Amendment Acts of 2000. They specifically said that for aliens who get or are married post-order of removal, the stay does not apply to them. Well, what about this whole concept that we value so much in this country about keeping families together, family values? What are we going to do about that? Your Honor, I agree that that's a legitimate concern, and I understand that this appellant has established a family here. However, in this case, he has not taken advantage of the opportunities that he had available to him to remain here with his family. Well, I think that's because he had a lawyer that didn't follow through and apparently deceived him. Your Honor, with respect to the ineffective assistance... And that's not unusual in the immigration context, is it? Huh? You know, I'm right about that. Let the people know what's going on. I didn't hear your answer. It may very well be not uncommon. But in this case, the important fact is that the appellant was aware that a final order of removal had been entered. He signed for and received a warrant and a bag and baggage letter which indicated that he had been removed from the country and he was required to report to officials. He has never made any allegation that that signature was not his or that he did not receive it. That was back in October of 2003. He did nothing. There's no evidence that he then went to his attorney. That was within the time to file a motion to reopen. He could have filed a motion to reopen, said ineffective assistance of counsel. I didn't know about this. I got the letter in the mail. What do I do? He did not do that in this case. And that's why the government is not willing to enter into that. Well, maybe he didn't understand what was in that letter. I'm sorry? Maybe he didn't understand what was in the letter. Your Honor, and I can have you take a look at the letter. The letter is very clear. It's at S.E.R. 253 to 260. And I think there's also some bold in there that says you have been ordered removed. Report to INS on such and such date for your flight to Armenia. I would say it's very clear. Let's go back to the real, if we could, to the Real ID Act for a moment. And I apologize. I know we're taking you over your time, but it's confusing to me because of the new statute being engrafted onto this habeas field. So I think I know what I would think the issues were if we would just get the appeal that was originally briefed before the Real ID Act. But now we've got the Real ID Act, and it says we should, or the government and the petitioner seem to take the position, both of them, we should treat this as a petition for review. Okay. So then if we do, and I understand what the government is saying, that treating it as a petition for review, we would have not only the habeas issue, but we would have the asylum issue before us? The court would have the BIA's final order of removal before them. And that includes their denial of asylum. Correct. So that if we wanted to, you know, I realize we could rely on the government's excerpts. We thought that was enough. But if we wanted to see everything to assess the credibility determination, we would have to ask for the whole record, right? Certainly, if the court wants to. And that could be done. That would just, I don't know what the expense is or the time, but it's done all the time. So I guess that would not be out of the ordinary. If we got all that, then where are we? We'd have to have supplemental briefing, I would argue that you do not, that this court does not need supplemental briefing because the appellant has never fought the asylum issue before. He has never raised it. He didn't raise it in the district court at all. He didn't raise it in his opening brief before this court. If the court wanted to err on the ultimate side of caution and consider it raised and review it, then I agree with the court. You would need the entire record and the evidence that the immigration. So let's assume, just for a moment, that we went down that road. What happens then? Can he then file to seek adjustment of status while all that's being done or does he have to wait until that's over? No, it's my understanding that he does have a pending motion to reopen. And that motion to reopen, he can assert his ineffective assistance claims or his adjustment claim while this proceeds. But if he wants to assert ineffective assistance, doesn't he have to satisfy the Lozada requirement? Yes, Your Honor. So they have to claim that the ineffectiveness was within the scope of the representation. Correct. And that there's been a bar complaint and so on. Yes. And I have not seen the motion to reopen that's been filed. It's not part of the record. So I cannot comment on what evidence has been submitted or whether it's sufficient. It sounded from the appellant's argument that they haven't asserted the Lozada requirements. I'm unaware of whether they have or haven't. But anyway, we'll try to sort it out. Thank you for your patience. Thank you. Well, you know, I hear, yes, they can file a motion to reopen. But no, they can't file a motion to reopen. Are we talking about different kinds of motions to reopen? Yes, they can file a motion to reopen, which they already have. All right. And in that motion to reopen, they can assert the ineffective assistance of counsel as well as the adjustment claim. And it's up to the agency to decide whether they want to consider it on the merits because it's untimely. That's correct. The agency has the ability to waive the timeliness, which is exactly what they set forth in the Lozada when they set forth that threshold procedure. As the Court can imagine, the agency gets a considerable amount of ineffective assistance claims right before the alien is going to be removed. So under Lozada, they have the three-prong test. They go through, I think the alien has to submit some affidavits, some notice that he has provided to the attorney. The attorney has the ability to respond. If, based on that, there is sufficient evidence that the BIA needs to consider whether the petitioner actually had a fair opportunity to challenge the BIA's decision, then the BIA on its own initiative with DHS can issue a stay of the final order of removal and reopen the proceedings without regard to the untimeliness. My understanding is, from other cases, though, I could be wrong, that the BIA, it's never going to get out of the starting blocks. The BIA is not going to consider ineffectiveness of counsel if there wasn't that notice to counsel and a bar complaint and the third requirement of Lozada. It is also my understanding that the BIA has dismissed complaints for failure, for motions to reopen, for failure to comply with the three requirements of Lozada. However, I have also seen cases, and this isn't part of the record, but I have also seen cases where the petitioner has submitted that they don't have sufficient time to get the affidavit from counsel. So there's some cases where they act without that. Correct. They need additional time to satisfy the Lozada requirements, and the BIA in the past has accepted that. It has accepted that and given them more time? Correct. Or just gone ahead and ruled on the issue without that? Accepted it and given it more time. My understanding is that they need to see those three requirements met to make an evaluation, a threshold evaluation, whether we reopen and get into the actual merits of the ineffective assistance. Okay. Thank you. And so there's still time to do that, right? Here. It could have been done yesterday. It could be done today. He's technically today still under a final order of removal, but the motion to reopen is pending. It could be done today. Well, I'll tell you this. You're the most knowledgeable attorney for the government. I think I've ever had the pleasure of having argued before me. You know your stuff, and it's very nice of you to give all this good advice, because that's your duty, right? I mean, we're public servants, aren't we? Yes, sir. And our job is to help people, right? Yes, sir. Not to knock them down. I appreciate your thoughtfulness here. I appreciate that. Thank you, Your Honor. Thank you. Your Honor, could I have a couple of minutes for rebuttal time, based on the last comment you made about the knowledge of the government attorney? Yeah, sure. I actually don't believe that the government attorney is very knowledgeable about the facts of this case, because the first thing that she indicated was that the Petitioner never challenged the validity of his asylum decision. The opening brief to you. Well, there's an old saying, don't look a gift horse in the mouth. I have to just point out to the Court that on the statement of the case on page three, we specifically state that this is because there are substantial The only thing is, no good deed goes unpunished. That's right. Page three of the record says that there is substantial evidentiary basis for concluding that should Al-Istan be forced to return to Armenia, he will undoubtedly face arrest, arbitrary detention, physical beating, and torture as a result of his Jehovah's Witness faith at the hands of the Armenian police and national military. Doesn't this all devolve, though, to the credibility dispute, because the immigration judge, as I read it, didn't believe that he even necessarily truly was Jehovah's Witness because of the contradictions, the absence of baptism, and a variety of other factors that the immigration judge relied on. So if we were to review that, as Judge Gould indicated on a full record, everything depends on his credibility, including his alleged fear of future persecution. Absolutely, Your Honor. And I would add that one of the things that you would be reviewing would be the BIA deciding to overturn the judge on the very point that our client didn't file a frivolous application. You would also be privy to the entire decision, which talks about how the judge was amazed that the Petitioner was able to get documents which the judge had requested. Well, it's sort of you do if you do and you damned if you don't. I mean, that's basically what happened. He filed two asylum applications. He filed one right when he came into this country, which was denied. Well, you know, I was feeling pretty good before you got up there and started the talk. I actually would like to add one more point, Your Honors, if you would allow me to. I can only stand so much. I understand. But it's a critical point, and that is that Section 245A and especially Section 245I does not apply to this case. If a person legally enters this country, legally enters and marries a U.S. citizen, as long as he's in proceedings, he is allowed to adjust his status. He just needs to show the bona fides of his marriage. And people who even work without authorization and who have overstayed for over seven or eight years, and I have clients like that, too, are forgiven because they are married to a U.S. citizen if they can show the bona fides of their marriage. So I believe that if this Court converts it into a petition for review, if this Court does anything to legitimate the fact that our client didn't have the time to file this petition because he was ill-advised by his attorney. Wait. While we're all giving each other advice on these issues, let me just say this, just one judge's view. On the asylum issue, if that's before us, we'll probably have to get the record and look at it, or maybe we can do it on the excerpts. I don't know the answer to that yet, but we'll look at it. But on reopening late because a lawyer was allegedly ineffective, I don't see how you can get anywhere without following the requirements of LAZADA. So I don't think the Board will reopen, and I don't think that there's anything we could do or you could do about that. So a word to the wise. I would advise this Court to take a look at the Derringer decision from the circuit, which didn't involve a LAZADA appeal at all. There might be some exception, but, I mean, it's the rule, so that's my view on it. But anyway, we'll look at the asylum and everything else. Thank you. Well, are you going to take care of all those LAZADA requirements or not? We'll do what we have to do. What? We'll do what we have to do, yes. What did you say? You asked me if we have to take care of all the other requirements. Are you going to take care of them? Yes. Oh, because I thought you kind of indicated that you didn't think that was necessary. We'll do whatever we have to do. Well, you know, I think you've got some pretty good advice here, but maybe you know a lot more than we do. Okay, matter is submitted. Okay. Thank you. You want to take a break? Can we take a short break? Sure, yeah.
judges: Pregerson, Graber, Gould